**Opinion issued January 14, 2020**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-00827-CR

———————————

**GENEVIA ANN DAVIS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 232nd District Court**
**Harris County, Texas**
**Trial Court Case No. 1535200**

---

## MEMORANDUM OPINION

Appellant Genevia Ann Davis was charged with murder in the shooting death of her husband, complainant Morgan Davis.[1] The jury found her guilty of the lesser-included offense of manslaughter and assessed her punishment at twenty

---

[1]  *See* TEX. PENAL CODE § 19.02.

years' confinement. In her sole issue on appeal, Davis argues that the trial court erred in denying her requested instruction on the lesser-included offense of criminally negligent homicide. We affirm.

## Background

Davis married her husband, Morgan, in 2002, and they had a daughter together. Their marriage was plagued by conflict, and Davis and other witnesses testified that Morgan had a drinking problem and that he was abusive toward Davis.

On the day of the shooting, Davis had invited her friends, Blanca and Heymard Cossio, and their children over for a visit. When the Cossios arrived, Morgan was drunk. While Davis and the Cossios drank and conversed, Morgan also made some insulting and inappropriate comments. Morgan then left for his bedroom, and Davis and the Cossios thought that he was going to sleep. Sometime later, however, Morgan reentered the room where Davis and the Cossios were visiting and seemed to be undressing. The Cossios left quickly. Morgan removed his pants and urinated in the kitchen sink, and after, Davis testified that Morgan was "cursing and yelling," so she encouraged him to go back to the bedroom.

In the bedroom, Morgan laid down on the bed, but he "proceeded to yell at [Davis] and curse [her] and call [her] names." Davis testified that she "was waiting to get undressed [for bed] because you just never know what's going to happen. So

2

[she] was waiting for [Morgan] to calm down," but Morgan continued yelling and cursing and told her that she was "going to regret having friends over." Davis testified that it angered Morgan when she had friends over and that he would chase away her friends. Davis testified that, as Morgan was yelling and cursing, he started to get up out of the bed and looked over at the nightstand, which had a loaded gun on it. Once she realized the gun was there, Davis testified that she "just knew something was going to happen to [her]." Davis picked the gun up "because [she] knew that he was going to hurt [her]," based on her past experiences of his physical, mental, and emotional abuse, and she shot him with it.

Davis testified that, in that moment, she was scared that she would be seriously injured:

Q. But that moment in time, did you think it was either him or you?

A.  Yes, I did. I knew it. I knew it was going to be either him or me.

After shooting Morgan, Davis called the Cossios, told them that she had shot her husband, and asked them to return to her house to pick up her daughter. Davis also called 9-1-1 to report the shooting, telling them that she "shot [her] fucking husband." The State presented witnesses who testified that it was odd that no one at the home had provided first aid or CPR to Morgan. Davis, however, testified that she did not attempt CPR on Morgan because she had no training, Morgan was too

3

heavy to move, and she was not in the right state of mind to follow the 9-1-1 operator's instructions.

Davis testified that she did not hear the Cossios arrive, but Heymard came to check on her, and she told him she was okay. Davis testified that there were "a lot of different things going through her mind at that moment." Her counsel then asked the following questions:

Q. At one millisecond, were you aware but did you consciously disregard the substantial risk in the circumstances?

A. Yes.

Q. And in one millisecond, were you also not aware of the circumstances?

A. Yes.

Q. Was a lot going through your head?

A. Yes. I didn't know what direction to go.

. . . .

Q. Are you talking about before the shooting?

A. Talking about the whole—yes, before and after.

Q. What about during?

A. It just happened. I don't know. I was—I was in shock. Didn't know what to do. I didn't know how to do it. I just wanted him to be okay.

When law enforcement arrived, one officer noted Davis's demeanor, testifying that "she was a little upset, but she wasn't overly upset. I mean, she was

4

[able] to tell me where he was at and what she had done." He noticed that the house "was in disarray" with "trash and items strewn about the house," but it did not look as if there had been a struggle. The officer testified that the first thing Davis told him was, "The mother-fucker wouldn't shut up so I shot his ass." The officer then attempted to provide first aid to Morgan, but Morgan died as a result of the gunshot wound.

The trial court charged the jury on the offense of murder and on the lesser-included offense of manslaughter. The trial court further instructed the jury regarding the law of self-defense. Davis requested a lesser-included offense instruction on criminally negligent homicide, stating:

> I'm going to request the criminally negligent homicide lesser-included. I do believe—it's only a scintilla, but I do believe when Ms. Davis testified I asked her a very awkwardly-worded question about [whether she] should have been aware of the risk and she did answer that in the affirmative.

The trial court denied this additional instruction. The jury found Davis guilty of manslaughter and assessed her punishment at twenty years' confinement.

## Lesser Included Offense

In her sole issue on appeal, Davis argues that the trial court erred in refusing her request for a jury instruction on the lesser-included offense of criminally negligent homicide.

## A.    Standard of Review

When reviewing alleged charge error, we first determine whether error exists and then, if so, ascertain whether the resulting harm is sufficient to warrant a reversal. *Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015). We follow a two-step test in determining whether a trial court is required to give a requested instruction on a lesser-included offense. *Bullock v. State*, 509 S.W.3d 921, 924 (Tex. Crim. App. 2016). The first step is to determine whether the requested instruction pertains to an offense that is a lesser-included offense of the charged offense, which is a matter of law. *Id.* Under this step, an offense is a lesser-included offense if it is within the proof necessary to establish the offense charged. *Sweed v. State*, 351 S.W.3d 63, 68 (Tex. Crim. App. 2011). The second step is to ask whether there is evidence in the record that supports giving the instruction to the jury. *Id.* Under this step, a defendant is entitled to an instruction on a lesser-included offense when there is some evidence in the record that would permit a jury to rationally find that, if the defendant is guilty, he is guilty only of the lesser-included offense. *Rice v. State*, 333 S.W.3d 140, 145 (Tex. Crim. App. 2011). The evidence must establish the lesser-included offense as a valid, rational alternative to the charge offense. *Id.* (citing *Hall v. State*, 225 S.W.3d 524, 536 (Tex. Crim. App. 2007)).

**B.     Murder, Manslaughter, and Criminally Negligent Homicide**

Davis was indicted for the offense of murder. She received a jury instruction on the lesser-included offense of manslaughter, and she requested (but was denied) an instruction on criminally negligent homicide.

Relevant here, a person commits murder if she "intentionally or knowingly causes the death of an individual" or if she "intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual." TEX. PENAL CODE § 19.02(b). A person commits manslaughter if she "recklessly causes the death of an individual." *Id.* § 19.04(a). "A person acts recklessly, or is reckless, with respect to circumstances surrounding [her] conduct or the result of [her] conduct when [she] is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." *Id.* § 6.03(c). A person commits criminally negligent homicide if she "causes the death of an individual by criminal negligence." *Id.* § 19.05(a). "A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding [her] conduct or the result of [her] conduct when [she] ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur." *Id.* § 6.03(d).

Based solely on the elements of the offenses, both manslaughter and criminally negligent homicide are lesser-included offenses of murder because the

7

only difference between the crimes is the culpable mental state. *See Wasylina v. State*, 275 S.W.3d 908, 910 (Tex. Crim. App. 2009); *Cardenas v. State*, 30 S.W.3d 384, 392 (Tex. Crim. App. 2000); *Gahagan v. State*, 242 S.W.3d 80, 89 (Tex. App.—Houston [1st Dist.] 2007, pet ref'd). Thus, we must now consider whether there is evidence in the record that supports giving the instruction on criminally negligence homicide to the jury. *See Sweed*, 351 S.W.3d at 68.

To be entitled to this instruction, the record must contain some evidence that would permit a jury to rationally find that, if Davis was guilty, she was guilty only of the lesser-included offense of criminally negligent homicide, i.e., that she when she caused Morgan's death, she ought to have been aware of a substantial and unjustifiable risk with respect to the circumstances surrounding her conduct or the result of her conduct but was not. *See* TEX. PENAL CODE §§ 6.03(d); 19.05(a); *Rice*, 333 S.W.3d at 145 (providing general standard for reviewing error in lesser-included offense instruction).

The record here does not support such a conclusion. Nothing in the record establishes that the lesser-included offense of criminally negligent homicide was a valid, rational alternative to the charged offense of murder or the lesser-included offense of manslaughter. *See Rice*, 333 S.W.3d at 145. There is no evidence that Davis was not aware of the risk involved in shooting Morgan. She testified at trial that she picked the gun up "because [she] knew that he was going to hurt [her]"

based on her past experiences of his physical, mental, and emotional abuse, and she shot him with it because she believed that it "was either him or [her]." Thus, she admitted that she shot Morgan, but she did it in self-defense. *See Johnson v. State*, 915 S.W.2d 653, 659–60 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd) (holding that trial court properly refused to give instructions on lesser-included offenses involving elements of recklessness and criminal negligence where defendant testified he acted in self-defense); *see also Martinez v. State*, 16 S.W.3d 845, 848 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) (stating "one cannot accidently or recklessly act in self-defense"). Nothing in the record indicates that she was not aware of the risk associated with her conduct.

Davis argues on appeal that there was evidence entitling her to this instruction because she testified that she was unaware of the risk for a "millisecond" when she picked up the gun from the nightstand and pointed it at Morgan. The testimony that she refers to, however, does not indicate that, if she was guilty, she was guilty only of criminally negligent homicide. She testified generally that "at one millisecond, [she was] aware but . . . consciously disregard[ed] the substantial risk in the circumstances," and "in [another] millisecond, [she was] also not aware of the circumstances." Viewing this testimony in the light most favorable to Davis, nothing in this statement indicates that, at the time she picked the gun up off the nightstand and shot at Morgan, Davis

ought to have been aware of a substantial and unjustifiable risk in the circumstances or in the result of her conduct but was not. *See* TEX. PENAL CODE §§ 6.03(d); 19.05(a); *see also Hall*, 225 S.W.3d at 534–35 (anything more than scintilla of evidence may be sufficient to entitle defendant to lesser charge).

Davis cites *Thomas v. State*, 699 S.W.2d 845 (Tex. Crim. App. 1985) to support her assertion that "just because [she] picked up a gun and pointed it at the complainant, she was not precluded from a jury charge that included criminally negligent homicide." *Thomas* does not support Davis's contention. To the contrary, in *Thomas*, the Court of Criminal Appeals observed that not "[e]very case in which someone points a loaded gun at another . . . require[s] that a charge on criminally negligent homicide be given." *Id.* at 850. Rather, the court held that the "attendant circumstances from which the defendant's mental state can be inferred must be collectively examined in light of the definition of criminally negligent conduct" and that "[o]ther evidence raising the issue of whether or not a defendant was aware of the risk must be presented before such charge is required." *Id.*

Here, the evidence does not show that Davis merely "picked up a gun and pointed it at [Morgan]." Rather, the evidence shows that Davis knew the gun was loaded, that she feared Morgan was going to use the gun to hurt her, and that she believed she had to pick it up and shoot him before he could do the same to her. As the court in *Thomas* held, "Evidence that a defendant knows a gun is loaded, that

10

he is familiar with guns and their potential for injury, and that he points a gun at another, [is evidence that] indicates [the] person [is] aware of a risk created by that conduct and disregards the risk." *Id.* The evidence that Davis knew the gun was loaded and that she was aware of the danger posed by the gun when she pointed and fired it at Morgan indicated either that she acted intentionally or knowingly or that she was aware of the risk, but she disregarded it.[2] *See id.* Even considering Davis's testimony that she "was not aware of the circumstances" for a "millisecond," there is no evidence that would permit the jury to rationally find that Davis was unaware of the particular risks of her actions in shooting Morgan.

We conclude that the trial court did not err in refusing Davis's requested instruction on the lesser-included offense of criminally negligent homicide. We overrule her sole issue on appeal.

---

[2]    We note that the only portion of the trial court's charge that has been challenged on appeal is the omission of an instruction on the lesser-included offense of criminally negligent homicide. We express no opinion on the remainder of the trial court's charge.

**Conclusion**

We affirm the judgment of the trial court.

Richard Hightower
Justice

Panel consists of Chief Justice Radack and Justices Landau and Hightower.

Do not publish. TEX. R. APP. P. 47.2(b).